IN RE ANTONIO GUZMÁN JUARBE, Respondent.

No. 97. Submitted February 2, 1961.—Decided March 7, 1961.

*R. Efrén Bernier* for respondent. *J. B. Fernández Badillo, Attorney General,* and *William Fred Santiago, Assistant Attorney General,* for The People.

Mr. Justice Blanco Lugo delivered the opinion of the Court.

The Attorney General of Puerto Rico filed a complaint against Antonio Guzmán Juarbe, attorney at law, charging him with improper and immoral conduct consisting in (a) having negotiated a settlement for a sum less than the amount stated in a judgment which had been rendered in favor of his client Norberto Velázquez Hernández, without the latter's consent; (b) having appropriated to his own use and benefit the sum of money which he received in the said settlement; and (c) having stated "under oath" at the Superior Court, Aguadilla Part, in a writing for payment of judgment, that he had received the total amount of the judgment, when in fact, as we have already stated, he settled for a lesser sum.[1] The respondent acknowledged the existence of

---

[1] The charge against him reads as follows:

"That the respondent, Antonio Guzmán Juarbe, voluntarily and maliciously violated the oath which he took as an attorney at law on April 9, 1951, and, specifically Canons Nos. 10, 11, 22 and 25 of the Canons of Professional Ethics (48 P.R.R. XI), when having obtained a judgment in favor of his client Mr. Norberto Velázquez Hernández, for the sum of $716.00, he negotiated a settlement with the losing party for the amount of $550.00, appropriating the same to himself, all this without knowledge of his client or notification to him of these acts. In addition, the respondent observed an immoral conduct unbecoming an attorney at law,

the judgment referred to in said charge, and he denied the remaining facts.

The report of Mr. Angel Fiol Negrón, designated Master to hear the evidence, establishes the following facts:

"2.—The respondent intervened as counsel for the plaintiff and represented the latter as such in civil case No. CS-54-643 filed in the Superior Court, Aguadilla Part, by Norberto Velázquez Hernández against José del Carmen Vargas Soto, for damages, and which culminated in a final judgment rendered on July 31, 1958, whereby said defendant was ordered to pay to said plaintiff the sum of $590.00, besides costs and the sum of $100.00 for attorney's fees. The defendant, feeling aggrieved by this judgment, moved for its reconsideration, which motion being denied, he appealed to the Supreme Court on September 4, 1958.

"3.—After the appeal was taken and before it was perfected, the respondent herein agreed with the defendant José del Carmen Vargas Soto to settle the litigation for the sum of $550.00 as payment and satisfaction of the judgment which had been rendered. The respondent did not consult his client and principal, the plaintiff in this law-suit, before entering into this agreement, nor was the latter notified thereof in any way whatsoever. Pursuant to this agreement, on September 15, 1958 the defendant Vargas Soto went to the Superior Court building, Aguadilla Part, where he met his attorney, José Veray, Jr., as well as respondent herein and delivered to the latter, as agreed, the sum of $550.00 in cash. The plaintiff, and respondent's client, Norberto Velázquez Hernández, was not present at the said meeting. Notwithstanding the actual amount received by the respondent, the defendant's counsel, Mr. José Veray, Jr., timely filed in the court a written motion requesting the dismissal of the case because the defendant, according to the motion, had paid the plaintiff the sums of $590.00 as prin-

---

to the detriment of the prestige, the dignity and respect of the Courts of Justice, when he stated under oath in a motion filed before the Superior Court of Puerto Rico, Aguadilla Part, that he had received the judgment money when he knew that such assertion was false. (Civil Case No. CS-54-643.) "Respondent's conduct was not prompted by a desire to defend the better interests of justice in general and of his client in particular, but was rather motivated by the personal financial benefit which he may derive from such conduct."

cipal, $100.00 for attorney's fees, and $26.00 for costs. The respondent, in his capacity as plaintiff's attorney, set forth at the bottom of said motion, his consent to the dismissal of the case 'since the sums hereinabove mentioned had been paid to the plaintiff.' In view of defendant's motion and of plaintiff's consent, through their respective attorney's the court ordered the dismissal of the case.

"4.—The respondent did not deposit in court the sum of $550.00 thus received, neither did he deliver it to his client. Thereafter, he gave the latter $100.00, telling him that it was from his own money, retaining the difference. He never informed his client that he had settled the case and said sum of $100.00 appeared as a loan from the respondent on account of the amount to be collected later from the judgment.

"5.—The evidence does not support respondent's contention that he had received from the defendant in the case CS-54-643 the total amount of the judgment and that when the respondent went to deliver said amount to his client in Isabela some days later, his client took $100.00 only, leaving the rest of the money to respondent which the latter was to pay him later. (Respondent's testimony is to the effect that José del Carmen Vargas delivered $716.00 to him which covered $590.00 as damages granted in case No. CS-54-643, $100.00 for attorney's fees and $26.00 for costs; that one third of the principal of the judgment, that is, $196.66 corresponded to the respondent, which together with the $100.00 of attorney's fees amounted to $296.66 as his share, there remaining $419.34 for his client; that when at his request his client went to his office in Isabela and respondent offered to deliver to him the latter amount, Velázquez told him that he knew respondent had been suspended from his office by the Supreme Court and was in a difficult situation; to give him $100.00 in advance and to pay the rest whenever he could. There was no written evidence of this alleged transaction, although, according to the respondent, he then sent Velázquez a promissory note for the sum of $319.34 to mature on October 22, 1959. Velázquez vehemently denied having negotiated said transaction and having received said note, although he did admit having received from the respondent the sum of $100.00 which the latter paid him in advance telling Velázquez it was from respondent's own money.) It is neither logical nor credible that the defendant in said lawsuit delivered to his opponent's attorney, who had defeated him in the litigation, the

total amount of the judgment plus costs and attorney's fees. In our opinion, the logical thing to do if the defendant was willing to pay the total amount of the judgment, with the costs and fees, was to deposit it in court or to deliver it to his attorney for that purpose. Neither was it an arrangement made by the respondent on behalf of defendant in order to spare the latter the inconveniences of a trip to Aguadilla. According to the respondent, the defendant delivered the money to him at his office in Isabela. To do so, the defendant necessarily had to pass through Aguadilla where the court and the office of defendant's own lawyer are located. There is no explanation then for the necessity of the delivery at Isabela. This circumstance coupled with other details springing from the evidence presented, moves us to give credence to the testimony of José del Carmen Vargas, of Norberto Velázquez and of José Veray, Jr., attorney at law, as to what actually occurred in relation to the settlement of case CS-54-643.

"On the other hand, assuming that the respondent had received the total amount of the judgment, the truth is that he delivered to his client only $100.00, withholding the difference. There is no controversy as to this fact. The testimony believed by us shows that the respondent's client did not consent to said retention, but on the contrary, from the beginning and insistently, he requested the respondent to deliver to him what the former had received as payment of the judgment which had been rendered. The evidence shows that Velázquez is a relatively poor man and that he was not in a condition to lend the respondent what to him was a considerable and an important amount of money. (It must be set forth herein, for whatever it may be worth, that once the hearing of the complaint was over, the respondent delivered to the Secretary of the Supreme Court the sum of $319.34, which according to the respondent is the amount owed by him to his client, plus certain sum representing interest.)

"6.—Assuming the fact, which we do not deem as proved, that the respondent had sent to his client the alleged promissory note for $319.34, such circumstance would not alter the fact, established by the evidence, that the respondent settled case No. CS-54-643 with the defendant without the knowledge or consent of his client and that besides, he also withheld, without his client's consent, a great part of the amount received in the settlement. It is to be noted also that according to the re-

spondent himself, he withheld the sum of $100.00 stipulated in the judgment as attorney's fees. Said sum did not belong to him but to his client."

▇▇▇ As it can be seen, the Master did not give credence to the version of the facts offered by the respondent. We have carefully read the transcript of the witnesses' testimony and we have examined the documentary evidence which has been presented. The findings of fact which we have copied are supported by the evidence, and actually, we do not see how a different conclusion can be reached.

Canon 11 of the Canons of Professional Ethics (48 P.R.R. XIV) provides that the lawyer should report promptly the money of the client coming into his possession and that he should avoid that the client's property be commingled with his private property, except with the client's knowledge and consent. This rule of conduct answers the necessity that the relationship between attorney and client be based on absolute honesty. Nothing tends to affect so much the reputation of the legal profession in an adverse way as situations similar to the one we are considering here. *Sturr* v. *State Bar of California*, 338 P.2d 897 (Cal. 1959). And the faith and the confidence of the public are essential in order that the lawyer may properly fulfill the duties which he owes society. This is why we must punish severely the acts committed by the respondent in this case. Chief Justice Vanderbilt of New Jersey has stated that "The funds in the hands of an attorney that belong to a client or others must be kept inviolate. For obvious reasons, the strictest rules of conduct apply here and every presumption works against the wrongful user." *In re Gavel*, 125 A.2d 696, 704 (N.J. 1956).[2] In the past, in similar situations, we have ordered the disbarment of the attorney-respondent. *In re Navarro*, 78 P.R.R.

---

[2] See *Handling of Clients' Money or other Trust Property—Commingling or Use by Attorney Cause for Suspension* (1960), 62 W.Va. L.R. 260; Annotation, *Disbarment for failure to account for money of client*, 43 A.L.R. 54.

349 (1955); *In re Soto Rivera*, 43 P.R.R. 1 (1932); *In re Flores Colón*, 37 P.R.R. 729 (1928); *In re Figueroa Maestre*, 20 P.R.R. 400 (1914). *Cf. In re Ruiz de Val*, 43 P.R.R. 252 (1932).

The foregoing is sufficient to dispose of the complaint, but we do not want to let this opportunity pass without pointing out that in this case a motion was filed in the trial court for the total payment of the judgment which did not adequately present all the facts. The attorneys of the parties should have set forth the settlement actually negotiated by them, even though the payment of the sum of five hundred and fifty dollars made by the defendant to the plaintiff, plus the waiver of part of respondent's share in the judgment as attorney's fees, equals the total amount of said judgment. Canon 22 of the Canons of Professional Ethics (48 P.R.R. XVIII). *Cf. In re Cruz Disdier*, 70 P.R.R. 428 (1949); *In re Díaz*, 16 P.R.R. 79 (1910).

At the time of the events recited in the charge the respondent had another petition for disbarment pending against him and which was decided a few days later, *In re Guzmán*, 80 P.R.R. 689 (1957). Notwithstanding this, he committed the offenses charged against him, the seriousness of which can only be punished by his removal from the practice of law.

The respondent is hereby disbarred and it is hereby ordered that his name be stricken from the roll of attorneys.[3]

Mr. Chief Justice Negrón Fernández did not participate herein.

---

[3] For the final disposition of this complaint the Secretary of this Court is hereby ordered to deliver the sum of $350.46, which has been deposited in his custody to Mr. Norberto Velázquez, in order to refund him his share in the judgment rendered by the Superior Court, Aguadilla Part.